CARLSON, Presiding Justice,
for the Court:
¶ 1. Calvin and Jamie Danos, individually and as guardians and next friends of Laura Matherne, a minor, Gavin Danos, a minor, and Marissa Danos, a minor (the Danoses), filed a petition for writ of certio-rari after the Court of Appeals reversed the Lamar County Circuit Court’s judgment entered in their favor against Flags-tar Bank, FSB (Flagstar), and rendered judgment in favor of Flagstar. Having granted certiorari, we now reverse the judgment of the Court of Appeals, and reinstate and affirm the judgment entered by the Circuit Court of Lamar County.
*300 FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. A Ml account of the factual background and procedural history of this case is set forth in Flagstar Bank, FSB v. Danos, 46 So.3d 348, 350-55, ¶¶ 5-14 (Miss.Ct.App.2008). We set out here only those facts and the procedural history necessary to address and decide the issues before us.
¶ 3. On March 22, 2004, the Danoses filed suit against Flagstar and other defendants.[1] Flagstar was a nonresident corporation not doing business in Mississippi, and thus with no agent in the state to receive service of process. The Danoses attempted service of process by certified mail with “restricted delivery, return receipt requested” to Albert Gladner, the registered agent for Flagstar, at a post office box in Troy, Michigan. The restricted-delivery summons was signed for, returned, and filed with the Lamar County Circuit Court on July 13, 2004. The signature on the receipt was illegible. The docket entry reads: “Summons returned— certified mail as to Flagstar Bank signed for 4-15-04 by ?, filed.” Attached to a subsequent pleading was a letter dated April 26, 2004, from Robert K. Fleming, the operations coordinator for Flagstar’s legal department in Troy, Michigan, addressed to Catherine Jacobs, counsel for the Danoses. The letter stated: “Flagstar Bank, FSB (Flagstar) is in receipt of the summons regarding the above referenced matter. The loan account was sold on November 16, 2001 to Chase Manhattan. You may contact them at the following address and phone number listed below.” An address for Chase Manhattan Mortgage, Inc., followed. On September 11, 2006, the Danoses filed an application for entry of default as to Michael Burks, with the customary accompanying affidavit of the plaintiffs’ attorney, resulting in the circuit clerk filing an entry of default on the same day. However, the Danoses never filed an application for entry of default against Flagstar due to its failure to answer the complaint; thus, there was no clerk’s entry of default against Flagstar.
¶ 4. On September 25, 2006, the trial judge entered a default judgment against Flagstar. The judgment read as follows:
DEFAULT JUDGMENT
THIS CAUSE having come before the Court for trial on the merits, and the clerk having called the docket, and on three different occasions called the Defendant, Flagstar Bank FSB, and said Defendant failed to answer or appear, it is therefore
ORDERED and ADJUDGED that Default Judgment be and is hereby entered against the Defendant, Flagstar Bank FSB and in favor of the Plaintiffs pursuant to Rule 55(b) of the Mississippi Rules of Civil Procedure. It is further
ORDERED and ADJUDGED that the hearing on damages be and is hereby set over to September 29, 2006 at 11:00 A.M. at the Lamar County Courthouse in Purvis, Mississippi.
The hearing to assess damages was held on September 29, 2006. Flagstar was not present, nor did it have counsel present. At the conclusion of the hearing, the trial judge, on the same day, entered a judgment for damages in the amount of $500,000 against both Flagstar and Burks.
¶ 5. On October 11, 2006, an attorney filed a notice of entry of appearance as counsel for Flagstar, and on November 15, 2006, the attorney filed a motion to set *301 aside the default judgment and for additional relief. Flagstar claimed that the Danoses’ service on it as a nonresident corporation with no Mississippi registered agent was flawed; thus, good cause existed to set aside the judgment. Flagstar argued that the Danoses had attempted to serve Flagstar by mailing a certified letter, restricted delivery requested, to Gladner, the registered agent for Flagstar, at a post office box in Troy, Michigan. The chief legal counsel for Flagstar submitted an affidavit stating that the registered agent for service of process upon Flagstar was Gladner. Flagstar’s attorney swore that the return receipt attached to the summons did not bear the signature of Glad-ner, but instead it was signed by Romeo Pena, a mail clerk whose job was to deliver the mail and who was not an authorized agent for sendee of process. Flagstar’s attorney stated that he was familiar with Pena’s signature. Flagstar’s attorney further stated that the return receipt was marked “Restricted Delivery” for Gladner, and Pena had no authority to sign the receipt on Gladner’s behalf. Flagstar reasoned that, because it had not received valid service of process, the judgment of the Lamar County Circuit Court was void.
116. Additionally, Flagstar argued that the Danoses did not follow the provisions of Mississippi Rule of Civil Procedure 55(a) in obtaining the default judgment, because they failed first to apply to the clerk for an entry of default, to support that application by affidavit or otherwise, and then to seek a default judgment from the trial court only after entry of the clerk’s default. Thus, Flagstar argued, the trial court’s entry of a default judgment was faulty due to its failure to follow the mandatory requirements of Rule 55. Finally, Flagstar argued that the default judgment should be set aside because the bank had a colorable defense to the merits of the Danoses’ complaint.
¶ 7. The trial court denied the motion to set aside default judgment and in a memorandum opinion explained its reasons for previously having entered the default judgment:
[T]he defendant failed to appear for a trial on the merits, and that on three different docket calls, the defendant had failed to appear, or make any announcements. After entry of the judgment, and consistent with M.R.C.P. 55, this Court held a hearing on damages, where the defendant also failed to appear.
The trial court found no merit in Flags-tar’s claim of lack of jurisdiction because of inadequate service of process, stating only that “[wjhile the defendant raises numerous other issues relating to service and prejudice, this Court deems them to be without merit.” The trial court likewise found no merit in Flagstar’s argument that the default judgment was void for failure to first secure the entry of the clerk’s default, ruling that neither an application for default nor a clerk’s entry of fault was required in this case. The trial court stated, “M.R.C.P. 55(b) expressly allows for a default to be taken if a party fails to appear at the trial. Here, the record reflects, that the defendant failed to appear at three docket calls, trial and at writ of inquiry on damages.”
¶8. The trial court rejected Flagstar’s contention that default judgments are not favored and should be set aside when certain factors are shown. The trial court’s order stated:
[T]his Court does not adopt the position advocated by the defendant in regards to liberally setting aside default judgments. Setting aside defaults as envisioned by the plaintiff [sic] would become merely a perfunctory request. Moreover, failure to uphold default judg *302 ments would not foster the important judicial policy of finality of judgment.
The trial court did not address whether Flagstar had a colorable defense to the action.
¶ 9. Aggrieved by the trial court’s denial of its motion to set aside the default judgment and judgment awarding damages, Flagstar appealed to us, and we assigned this case to the Court of Appeals.[2]
PROCEEDINGS IN THE COURT OF APPEALS
¶ 10. The Court of Appeals reversed the trial court’s judgment denying Flags-tar’s motion to set aside the default judgment, and rendered judgment in favor of Flagstar for lack of jurisdiction. A majority of the Court of Appeals found that, because Flagstar was an out-of-state corporation, Mississippi Rule of Civil Procedure 4(d)(4)[3] was to be followed. Citing Brown v. Bristol-Myers Squibb Co., 2002 WL 84213425, at *2-4, 2002 U.S. Dist. LEXIS 27445, *8-12 (S.D.Miss.2002), the majority noted: “If service is attempted by certified mail upon a corporation under Rule 4(c)(5), but is delivered to a person not designated to receive process under Rule 4(d)(4), then the process fails.” Thus, the majority found that, because the Danoses did not make an affirmative showing that the mailroom clerk who signed for the summons was in fact the registered agent for service of process for Flagstar, the service of process was void.
¶ 11. The dissent disagreed, opining that the Court of Appeals’ majority had misconstrued Mississippi Rules of Civil Procedure 4(c)(5) and 4(d)(4). Based on the dissent’s interpretation of Rule 4(c)(5), process was deemed complete when the certified letter was signed for and picked up by the mailroom clerk. The dissent reasoned that Rule 4(c)(5) does not address whether someone other than the registered agent for service of process for a corporation may sign for a certified letter addressed to the registered agent. According to the dissent, because Flagstar is not a natural person, the Danoses were not required, under Rule 4(c)(5), to mark the envelope for restricted delivery. Therefore, the fact that the mailroom clerk signed for the certified letter, which was marked restricted delivery to Gladner, was inconsequential to the effectiveness of the process on Flagstar. Finally, the dissent found that Rule 4(c)(5) required only that the certified letter be properly addressed to Flagstar’s registered agent for service of process, who was Gladner. Flagstar, 46 So.3d 348, 359-61, ¶¶ 32-37 (Irving, J., dissenting).
¶ 12. Aggrieved by the Court of Appeals’ judgment, the Danoses filed a motion for rehearing, which the Court of Appeals denied; therefore, the Danoses filed a Petition for Writ of Certiorari, which we granted on June 11, 2009. After reviewing the record, this Court, by order entered on December 3, 2009, directed the parties to supplement the record with the transcript of the March 12, 2007, hearing concerning the entry of the default judgment against Flagstar. Likewise, the Court permitted the parties to file simultaneous supplemen *303 tal briefs, if desired, and the parties thereafter submitted supplemental briefs. However, concerning the purported transcript of the March 12, 2007, hearing, Rhonda Wetzel, the court reporter, provided a letter to this Court stating that the hearing in question had been conducted in Judge Prichard’s chambers and was off the record. On December 28, 2009, Flagstar filed a motion to deem the appellate record complete.
DISCUSSION
I. WHETHER SERVICE OF PROCESS WAS EFFECTED ON FLAGSTAR.
¶ 18. The critical issue addressed by the Court of Appeals was whether the plaintiffs sufficiently complied with Rule 4(c)(5) so as to effect service of process on the defendant Flagstar.[4] The majority of the Court of Appeals answered this question in the negative, adversely to the plaintiffs. The majority based its decision on its finding that the person who signed for the summons was not Gladner, but a mail clerk, whose authority to receive the summons on behalf of Flagstar was not established to be in compliance with the mandate of Rule 4(d)(4). Respectfully, we think otherwise, and find Rule 4(d)(4) to be inapplicable on these facts.
¶ 14. The comment to Rule 4(c)(5) states:
The Rule 4(c)(5) procedure supplants the circuitous procedures available to obtain in personam jurisdiction against nonresidents. E.g. Miss.Code Ann. 13-3-68 (1972). However, the criteria for subjecting nonresidents to the jurisdiction of Mississippi courts are those established by the legislature.
¶ 15. Because Flagstar is a foreign corporation not doing business in the state, and thus has no registered agent in the state, Mississippi Code Section 13-3-57, Mississippi’s Long-Arm Statute, controls for purposes of jurisdictional intent. Miss. Code. Ann. § 13-3-57 (Rev.2002). However, the statute is silent with regard to service of process, in that it provides, “Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.” Id.
¶ 16. As the Court of Appeals’ dissent pointed out, Rule 4(c)(5) is silent with regard to whether someone other than the registered agent for service of process for a corporation may sign for a certified letter addressed to the registered agent. So too are the statutes. What is clear, however, from the standpoint of the efficacy of service of process on a foreign corporation by way of certified letter, is that the letter must be properly addressed to the person authorized to receive process on behalf of the corporation and actually delivered to that address. That was done in this case, as it is clear from the record that the letter was properly addressed and that it reached its destination. Cf. Pointer v. Huffman, 509 So.2d 870, 873 (Miss.1987) (after discussion on issue of whether constable had authority under statute to serve *304 process in name of sheriff, “[t]here being no dispute as to the fact of service and notice to the defendant ...., this Court finds no reversible error in the trial judge’s [holding that service of process was valid]”). In today’s case, Robert K. Fleming, the operations coordinator for Flagstar’s legal department, admitted to having received the process.
¶ 17. Further, we agree with the Court of Appeals’ dissent that the Danoses’ attempted service on Flagstar with “restricted delivery” does not in-and-of-itself render the attempted service invalid. This is a requirement born out of Mississippi Code Section 13-3-63, which governs service of process on nonresident motorists. Miss.Code Ann. § 13-3-63 (Rev.2002). The Danoses were not required to send the letter restricted delivery; the fact that they went the extra step should not be viewed as noncompliance with Rule 4(c)(5).
¶ 18. For the reasons stated, based on the facts revealed in today’s record, we find that service of process was proper in this matter. To hold otherwise would work an illogical burden on plaintiffs who have no control over a corporate defendant’s internal operating procedures, such as how mail rooms are run.
¶ 19. Because the Court of Appeals found that the default judgment must be set aside due to the trial court’s lack of jurisdiction to enter the judgment because of defective process, the Court of Appeals, understandably, did not address the three-prong balancing test grounded in our law to determine the propriety of the trial court’s refusal to set aside the default judgment. We thus turn now to this issue.
II. WHETHER THE TRIAL COURT ERRED IN DENYING FLAGS-TAR’S MOTION TO SET ASIDE THE DEFAULT JUDGMENT.
¶ 20. Flagstar appropriately filed a motion to set aside default judgment pursuant to Mississippi Rule of Civil Procedure 60(b). Without doubt, Mississippi Rule of Civil Procedure 55(c) is available to seek relief from a clerk’s entry of default, while Rule 60(b) is reserved for those occasions when a party seeks relief from the trial court’s entry of a judgment by default. American States Ins. Co. v. Rogillio, 10 So.3d 463, 467 (Miss.2009). Here, at least as to Flagstar, the circuit clerk entered no default, but instead, the trial court entered a default judgment pursuant to Mississippi Rule of Civil Procedure 55(b).
¶ 21. Mississippi Rule of Civil Procedure 60(b) states in pertinent part:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6) any other reason justifying relief from the judgment.
Miss. R. Civ. P. 60(b).
¶ 22. Although Flagstar does not specify what subsection of Rule 60(b) applies to justify granting relief from the judgment *305 entered against it, much of Flagstar’s focus throughout the life of this case has been on whether it was effectively served with process. Such an assertion would justify relief from the judgment pursuant to Rule 60(b)(4). Additionally, Rule 60(b)(6) is always available for an aggrieved party to seek relief from a judgment. This Court has stated that “Rule 60(b)(6) ‘stands as a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief.’” Porter v. Porter, 23 So.3d 438, 450 (Miss.2009) (quoting Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 969 (Miss.1998)) (citations omitted).
¶ 23. Thus, in today’s appeal, Flagstar argues that the trial court erred when it failed to apply properly the three-prong balancing test in ruling on Flagstar’s Rule 60(b) motion to set aside default judgment. In Rogillio, this Court reiterated the equitable factors to be considered by the trial courts in determining whether a default judgment should be set aside. Those three factors are:
(1) the nature and legitimacy of the defendant’s reasons for his default, i.e., whether the defendant has good cause for default, (2) whether [the] defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside.
Rogillio, 10 So.3d at 468 (citing H & W Transfer & Cartage Serv., Inc. v. Griffin, 511 So.2d 895, 898 (Miss.1987)). See also Guar. Nat’l Ins. Co. v. Pittman, 501 So.2d 377, 388 (Miss.1987).
¶ 24. Flagstar’s motion to set aside the default judgment is thirty pages in length, including exhibits. The first eleven pages of the motion are devoted to addressing the specific reasons to support Flagstar’s motion as they relate to the three-prong balancing test. In the motion, Flagstar focuses its attention on the good-cause and colorable-defense factors. We recite here portions of the trial judge’s memorandum opinion and order denying Flagstar’s motion to set aside default judgment:
On September 21, 2006, this Court entered a Default Judgment against the defendant, pursuant to M.R.C.P. 55(b).[5 ] The basis for the Judgment was that the defendant failed to appear for a trial on the merits, and that on three different docket calls, the defendant had failed to appear, or make any announee-ments.[6] After entry of the judgment, and consistent with M.R.C.P. 55, this *306 Court held a hearing on damages, where the defendant also failed to appear.
[[Image here]]
The crux of the defendant’s argument is that good cause exists to set aside and that a clerk’s entry of default is required. While the defendant raises numerous other issues relating to service and prejudice, this Court deems them to be without merit.
[[Image here]]
In Hartford, v. Underwriters Insurance Co. v. Williams [sic],[7] the Mississippi Supreme Court held that a defendant seeking relief under Rule 60(b)(6) must prove good cause, a colorable defense, and that setting aside will not prejudice the plaintiff.
The defendant’s chief argument regarding good cause is that the record is void as to any entry of default. However, as cited by the plaintiff in their response, M.R.C.P. 55(b) expressly allows for a default to be taken if a party fails to appear at the trial. Here, the record reflects, that the defendant failed to appear at three docket calls, trial and at the writ of inquiry on damages. In addition, the official comments to Rule 55, while [sic] read as follows, “when a defaulting party has failed to appear, thereby manifesting no intention to defend, he is not entitled to notice of the application for a default judgment under this rule.” See, Official Comments to M.R.C.P. 55(b). Thus, it is clear that neither an application or a clerk’s entry of default was needed in light of the facts.
¶ 25. Additionally, in his Memorandum Opinion and Order, the trial judge discussed the fact that, pursuant to Mississippi Rule of Civil Procedure 55(b), he had authority to enter a default judgment once a defendant failed to appear on the trial date. The trial judge also acknowledged Flagstar’s argument that Mississippi law does not favor default judgments and that trial courts should liberally set aside default judgments upon request. In response to that argument, the trial judge opined that such an approach of setting aside a default judgment simply upon request would be “perfunctory,” eliminating the necessity for performing the three-part balancing test set out by this Court, and that there existed an important judicial policy concerning finality of judgment.
¶ 26. In Rogillio, the trial court found that the default judgment had been entered properly. Rogillio, 10 So.3d at 466. The basis for this conclusion, however, was that “the failure of the defendant to respond to the complaint was not due to accident or mistake, nor any conduct of the plaintiff or plaintiffs counsel, but to poor business practices of the defendant and complete inattention to the complaint.” Id. Thus, as the trial court stated, “[t]he court finds there is no showing of good cause.” Id. Therefore, in Rogillio, the trial court apparently considered only the “good cause” prong in deciding to deny the defendant’s motion to set aside the default judgment.
¶ 27. Notwithstanding the trial court’s apparent failure to apply the proper test in Rogillio, however, this Court thus engaged in its own three-prong balancing inquiry on appeal. We stated that “[i]n deciding whether to set aside a default judgment, the trial court must consider [the three-prong balancing test].” Rogillio, 10 So.3d at 468. Just before that, however, and in the same breath, we *307 explained that “this Court applies a three-prong balancing test when determining whether a trial court properly decided a motion to set aside a default judgment.” Rogillio, 10 So.3d at 467-68 (emphasis added). Hence, we employed the test in Rogillio and found that the trial court had not abused its discretion in denying the defendant’s motion to set aside the default judgment. Id. at 476-77.[8]
¶ 28. Rogillio thus stands for the proposition that the trial court must employ the three-part balancing test when deciding whether to set aside a default judgment, and this Court must strike the same balance when determining whether the trial court abused its discretion in making that decision. While we are satisfied from the totality of the record, including the trial judge’s memorandum opinion and order, that the trial judge applied the required three-prong balancing test, we will conduct the Rogillio analysis ourselves to determine if the trial court abused its discretion in denying Flagstar’s motion to set aside the default judgment.
¶ 29. The Rogillio test includes a “good-cause” prong, a “colorable-defense” prong, and a “prejudice” prong. Id. at 468 (citing H & W Transfer, 511 So.2d at 898). The trial court’s order stated the correct test as follows: “a defendant seeking relief under Rule 60(b)(6) must prove good cause, a colorable defense, and that setting aside will not prejudice the plaintiff.”

A. Good Cause

¶ 30. The trial court’s memorandum opinion and order in today’s case pointed out that “the crux of the defendant’s argument is that good cause exists to set aside.” (Emphasis added.) Thereafter, the trial court’s order engaged in a substantial analysis regarding the “good-cause” prong and found Flagstar’s arguments to be without merit. The “good-cause” prong, however, does not pertain to “good cause” to set aside the default judgment. Rather, the “good-cause” prong refers to whether the defendant can show “good cause” for its default. Rogillio, 10 So.3d at 468. Flagstar never presented facts in its Motion to Set Aside specific to its reasons for default. The only facts Flagstar presented to the trial judge pertained to “good cause” to set aside the default judgment.
¶ 31. We note that in Flagstar’s Motion to Set Aside, its principal reasons for “good cause” to set aside were (1) that service of process was ineffective, and (2) that the default judgment was void because the Danoses had failed to apply for an entry of default. However, the only argument presented by Flagstar that could apply toward “good cause” for the default was that service of process was improper. We addressed that argument in Issue I and found service of process was effected on Flagstar. See supra Issue I. Thus, this prong weighs in favor of the Danoses.

B. Colorable Defense

¶ 32. A trial court confronted with a motion to set aside a default judgment likewise must consider whether the defaulting defendant has a colorable defense to the merits of the plaintiffs claim. Rogillio, 10 So.3d at 469. Admittedly, this Court has held that the “colorable-de-fense” prong is the most important factor. With regard to that prong, we have held that “[i]f any one of the three factors in the balancing test outweighs the other in *308 importance, this is the one.” Rogillio, 10 So.3d at 469-70 (citing Bailey v. Ga. Cotton Goods, 543 So.2d 180, 182 (Miss.1989)); see also Stanford v. Parker, 822 So.2d 886, 888 (Miss.2002) (quoting Allstate Ins. Co. v. Green, 794 So.2d 170, 174 (Miss.2001) (stating that this Court has “encouraged trial courts to vacate a default judgment where ‘the defendant has shown that he has a meritorious defense’ ”)).
¶ 33. Flagstar made several principal arguments regarding “colorable defenses” in its motion to set aside the default judgment. First, Flagstar argued that service of process was deficient. The trial court’s order denying the motion states that “the defendant raises numerous other issues relating to service ... [but] this Court deems them to be without merit.” (Emphasis added). Thus, it could be said that the trial court considered the “colorable-defense” prong, insofar as defective service of process is a “colorable defense,” but found Flagstar’s arguments thereunder to be lacking.
¶ 34. However, Flagstar also argued as a “colorable defense” that it could not be held liable, as a matter of law, for the injuries complained of by the Danoses. A short explanation of the background facts is required to understand this contention. The Danoses’ complaint asserted liability based on the fact that several agents of the defendant mortgage holders had “submitted false and erroneous information to their principles [sic]” and thus to the Danoses, the consumers. The complaint alleged, inter alia, that Chris Shirley and Amerigo Mortgage were agents of Flagstar. To be liable for the acts of a disclosed principal, the agent must have acted outside the scope of his agency and would incur no individual liability absent fraud or other equivalent conduct. Rosson v. McFarland, 962 So.2d 1279, 1288 (Miss.2007); see also Harrison v. Chandler-Sampson, Ins., Inc., 891 So.2d 224, 227-31 (Miss.2005). However, the trial court granted summary judgment to Shirley, finding that no genuine issues of material fact existed as to his liability.[9] Thus, Flagstar’s agent, who provided the sole basis for its alleged vicarious liability, was dismissed from the case. Since there is a valid argument that no agency relationship existed between Flagstar and the other defendants in the case that would have served as the basis for vicarious liability otherwise, this certainly could be deemed to be a “colorable defense” to the Danoses’ claims against Flagstar.[10] Thus, this prong would appear to weigh in favor of Flagstar.
¶ 35. However, notwithstanding our finding on this factor, we note that this Court addressed the availability of a color-able defense in Pointer v. Huffman, 509 So.2d 870, 874 (Miss.1987), and stated:
Pointer also testified concerning his defense to Huffman’s claim. The existence of a colorable defense on the merits “is a factor which should often be sufficient to justify vacation of a judgment entered by default.” Guaranty National Ins. Co. v. Pittman, 501 So.2d at 388-
[[Image here]]
The gist of Huffman’s claim is the failure of Pointer to include worker’s corn- *309 pensation coverage in an insurance package. However, the testimony of Pointer indicates there is an important factual issue which goes to the very heart of Huffman’s claim. Mr. Pointer’s testimony indicates a colorable defense in that Huffman voluntarily chose not to include worker’s compensation insurance within his insurance package. The resolution of that factual issue in favor of Pointer would negate the presence of any basis of liability.
To be sure, [Pointer] could have been more diligent in his actions to defend this suit. The trial court, in the exercise of his discretion, so held, and this Court finds no abuse of this discretion.
Pointer, 509 So.2d at 876.

C. Prejudice

¶ 36. Lastly, when confronted with a motion to set aside a default judgment, the trial court must consider and balance any prejudice the plaintiff would suffer if the default was set aside. Rogillio, 10 So.3d at 468. Here, the trial court’s order stated that the “defendant raises numerous other issues relating to ... prejudice [but] this Court deems them to be without merit.” In the introductory paragraph of his Memorandum Opinion and Order, the trial judge stated that he had “reviewed the motion [to set aside default judgment], memorandums [sic] in support, exhibits, as well as conducted a hearing.” Thus, it is readily apparent from this language that, prior to issuing his ruling, the trial judge had considered, inter alia, Flagstar’s motion to set aside default judgment with the attached exhibits, and the Danoses’ response to the motion, with exhibits attached to the response. Although the trial court did not specifically discuss the “prejudice” prong in its order, the Danoses did present facts in their response to Flags-tar’s motion to set aside indicating that they would suffer prejudice if the default judgment were set aside. Specifically, the Danoses argued that, due to their “substantial discovery, lengthy investigations, and many motions,” substantial prejudice would result if “they are forced to once again engage in lengthy and costly discovery to prepare this case for trial.” Additionally, the trial court, in its memorandum opinion and order, stated that “[i]t is also important to note, that [t]his case is approximately three years old.” The trial court also stated that it saw no need to set out a lengthy factual recitation “[g]iven the exhaustive factual background detailed in the Court’s Memorandum Opinion and Order, on Allstate’s Motion for Summary Judgment.”
¶ 37. In sum, notwithstanding the attention appropriately devoted to the col-orable-defense assertion in any case concerning issues of setting aside default judgments, in the end, of significant import, based on the facts and circumstances peculiar to the particular case before us today, is the following: As early in the life of this civil proceeding as April 22, 2004, Flagstar’s legal department operations coordinator mailed a letter addressed to the Danoses’ counsel stating, inter alia, “Flagstar Bank, FSB (Flagstar) is in receipt of the summons regarding the above referenced matter.” (Emphasis added). This unequivocal admission by Flagstar meant that it had received the summons with the following caveat:
NOTICE TO DEFENDANT
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.
Within thirty (30) days from the date of receipt of this Summons and Complaint, you are required to mail or hand deliver *310 a copy of a written answer either admitting or denying each allegation in the Complaint to CATHERINE H. JACOBS, ATTORNEY AT LAW, 425 PORTER AVENUE, OCEAN SPRINGS, MS 39564.
You must also file the original of your answers with the Clerk of the Circuit Court within a reasonable time thereafter.
¶ 38. The facts of this case are similar to those found in Guaranty National Insurance Company v. Pittman, 501 So.2d 377 (Miss.1987), wherein this Court affirmed the trial court’s denial of a motion to set aside a $400,000 default judgment entered after a hearing to assess damages in a case involving an unliquidated claim for damages incurred by the plaintiff due to an automobile accident. In so doing, this Court opined that “[assuming that [the defendant] could count to thirty and had some rudimentary familiarity with the Julian calendar, the summons instructed him that his answer was due on December 12, 1984.” Id. at 386-87. Thus, we are satisfied in today’s case that the operations coordinator in Flagstar’s legal department, through simple arithmetic, easily could have calculated that, in order to protect Flagstar’s interests in this litigation commenced by the Danoses by assuring that a default judgment would not be entered against it, regardless of Flagstar’s opinion as to the merits of the Danoses’ assertions against Flagstar, responsive pleadings were required to be filed by May 22, 2004. Instead, the record reveals that Flagstar, throughout the history of this litigation, rolled the dice on its claim that the Danos-es had failed to effect legal process upon it such that a lawful judgment could not be entered against it. See Sartain v. White, 588 So.2d 204, 208 (Miss.1991).
¶ 39. Likewise, we find applicable to today’s case that, although the Court, in Pittman, found the defendant had made a substantial showing that the defendant had a colorable defense on the merits of the plaintiffs claim, this Court stated:
In the final analysis, this case presents the questions whether we accord any meaning to a defendant’s Rule 12(a) duty to answer a final judgment entered after the defendant had been fully advised of his peril. It may be that people will miss fewer trains if they know the engineer will leave without them rather than delay even a few seconds. Although we are not about to inaugurate a policy of entering irrevocable defaults where no answer has been filed by the thirty-first day, we are equally resolved that people know that the duty to answer must be taken seriously. At some point the train must leave. That point had been reached in the case at bar on February 6,1985.[11]
Pittman, 501 So.2d at 388-89.
¶ 40. In today’s case, Flagstar’s train left the station on September 29, 2006, the date the trial court entered the judgment against Flagstar in the amount of $500,000.
¶ 41. Simply put, it is not the duty of the members of this Court to determine what decision we would have made had we been the trial judges in this case. Instead, as already noted, our solemn responsibility is to review the trial judge’s refusal to set aside the default judgment in this case by considering the record before us and applying the abuse-of-discretion standard of review. Having done so, we are unable to fairly conclude that the trial court exceeded its authority or abused its discretion in refusing to set aside the default judgment entered against Flagstar.
*311 ¶ 42. Finally, in briefly addressing Justice Pierce’s separate opinion wherein he suggests in ¶ 69 that we remand for a determination of damages based on an apportionment of fault between Flagstar and Michael Burks under Mississippi Code Section 85-5-7 (Rev.1999), we note that the record does not reveal that Flagstar ever presented this issue to the trial court. Thus, we need not consider this issue, which has been raised for the first time on appeal. Alexander v. Daniel, 904 So.2d 172, 183 (Miss.2005) (citing Triplett v. Mayor & Aldermen of Vicksburg, 758 So.2d 399, 401 (Miss.2000)).
CONCLUSION
¶ 43. For the reasons discussed, we find that the trial court did not abuse its discretion in refusing to set aside the default judgment. Therefore, the judgment of the Court of Appeals is reversed, and the Lamar County Circuit Court’s order denying the motion to set aside default judgment filed by Flagstar Bank, FSB, is reinstated and affirmed.
¶ 44. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THE JUDGMENT OF THE CIRCUIT COURT OF LAMAR COUNTY IS REINSTATED AND AFFIRMED.
GRAVES, P.J., AND KITCHENS, J., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J. DICKINSON AND PIERCE, JJ., JOIN IN PART. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION. PIERCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J. CHANDLER, J., NOT PARTICIPATING.

. By mid-September 2006, all defendants except Michael Burks and Flagstar had been dismissed from this lawsuit.

. Michael Burks did not appeal from the trial court's judgment entered against him; therefore, the only parties to today’s appeal are Flagstar and the Danoses.

. Rule 4(d)(4) provides in pertinent part:
Service by sheriff or process server shall be made as follows;
... (4) Upon a ... foreign corporation ... by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

. Rule 4(c)(5) provides:

Service by Certified Mail on Person Outside State.

In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked "restricted delivery.” Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused.”
Miss. R. Civ. P. 4(c)(5).

. Although the default judgment was dated September 21, 2006, the actual date of entry of the default judgment was September 25, 2006.

. The docket reflects, inter alia, the following filings (and these documents likewise appear in the record before us): February 10, 2005, Notice of Cases on Trial Calendar, stating the trial docket (including this case) would be set on March 14, 2005, at 8:00 a.m.; March 25, 2005, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on September 14, 2005, and that announcements could be made at docket call on September 12, 2005, at 9:00 a.m.; September 19, 2005, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on March 22, 2006, and that announcements could be made at docket call on March 13, 2006; March 27, 2006, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on June 20, 2006, and that announcements could be made at docket call on June 12, 2006; June 24, 2006, Order Granting Motion for Continuance and setting trial for September 19, 2006, at 9:00 a.m.; and July 14, 2006, Notice of Pre-Setting for Trial, stating that this case was pre-set for trial at 9:00 a.m. on September 19, 2006, and that announcements could be made at docket call on September 11, 2006.

. It appears that the trial court was referring to Hartford Underwriters Insurance Co. v. Williams, 936 So.2d 888 (Miss.2006).

. This Court reviews a trial court’s decision regarding a motion to set aside a default judgment for an abuse of discretion. Rogillio, 10 So.3d at 467 (citing Guar. Nat'l Ins. Co. v. Pittman, 501 So.2d 377, 388 (Miss.1987)).

. The order granting summary judgment to Shirley was included as an exhibit in Flags-tar’s motion to set aside the default judgment.

. Flagstar also argued in its motion to set aside the default judgment that it did not hold the mortgage on the home, which is the basis of this suit, when the allegedly fraudulent acts leading to the lawsuit occurred. If this is true, then it would appear that Flagstar cannot be held liable to Danos under the note. This undoubtedly would be a "colorable defense” to the Danoses' claim, and certainly would be a factor to have been considered by the trial court.

. This was the date of the trial court’s entry of a default judgment as to liability and final judgment awarding damages after a hearing to assess damages.